UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DANA EHDE,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**BROOKESTONE FUNDING, INC.**, a New York registered company,<br><br>*Defendant*. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

Plaintiff Dana Ehde ("Plaintiff Ehde" or "Ehde") brings this Class Action Complaint and Demand for Jury Trial against Defendant Brookestone Funding, Inc. ("Defendant" or "Brookestone Funding") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making pre-recorded telemarketing calls to consumers without consent, in addition to placing unsolicited calls to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Ehde, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Ehde is a resident of Chalfont, Pennsylvania.

2. Defendant Brookestone Funding is a New York registered company headquartered in Kings County, New York.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in April 2024 alone, at a rate of 143.8 million per day. www.robocallindex.com (last visited September 8, 2024).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone*

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Brookestone Funding is a business funding lender that solicits financing solutions to consumers throughout the US.[3]

14. Defendant Brookestone Funding places calls to solicit its business funding solutions.

15. Brookestone Funding states that it is looking for "One-Call-Close" or that "Telesales experience is highly desirable in job postings":

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://brookestonefunding.com/about-us/

> We are "Brookestone Funding", the country's fastest growing Direct Lending organization. We provide a financial lifeline for small to medium size businesses across our nation who are in need of a fast influx of cash but are unable to go to a traditional lender to secure it.
> We have added 3 additional seats within our elite Sales Team and are interviewing select candidates to get them filled.
>
> **Our Perfect Candidate**
>
> Intense Drive, Bordering on Obsession to Achieve a Top 1% Income.
> Relentless Attitude towards Closing Deals.
> Outstandingly Strong Commission Structure.
> Passionate about Supporting this Country's Small Business Community.
> Any "One-Call-Close" or Telesales Experience is Highly Desirable but We'll Train the Right Natural Talent.
> Superior Communication Skills.
> Bullet-proof Confidence and Work Ethic.
> Ability to Deliver a Sophisticated, Numbers Oriented Sales Presentation.
> Looking to "Plant Some Roots" and Grow with a Rapidly Expanding Company.
>
> **What We Offer Our Team**
>
> Every Necessary Resource/Tool to Earn that 1% Income.
> High Quality Warm Leads that Made Contact with Us to Discuss our Lending Products.
> Intensive Training and Ongoing Coaching by the Industry's Elite Producers.
> Super High Energy Office with Motivated and Supportive Teammates.
> A Young, Fast Growing Company Providing Unlimited Growth Potential.
> Syndication Opportunities to Invest in Small Business Funding.
>
> **If you feel you have what it takes to excel in a hard-hitting, high-income commission sales environment, make contact with me.**
> **We'll provide you a clear path to follow and a proven plan to achieve true financial independence.** [4]

16. Brookestone Funding purchases leads, as per a LinkedIn comment from Eric Malone, a Brookestone Funding employee:

---

[4] https://www.glassdoor.com/job-listing/merchant-funding-sales-specialist-no-cold-calling-brookestone-funding-inc-JV_IC1126748_KO0,49_KE50,73.htm?jl=1009402179475



17.     Unfortunately, Brookestone Funding is purchasing leads who never provided consent to receive solicitation calls, as per Plaintiff's experience.

18.     Defendant Brookestone Funding places pre-recorded solicitation calls to consumers to solicit its business funding solutions, as per Plaintiff's experience.

19.     In addition, Brookestone Funding places solicitation calls to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

20.     The calls that Brookestone Funding places to consumer phone numbers are solicitations for business funding.

---

[5] https://www.linkedin.com/in/eric-malone-04162227a/recent-activity/comments/

7

21. In response to these calls, Plaintiff Ehde brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF EHDE'S ALLEGATIONS

22. Plaintiff Ehde is the sole owner and user of her cell phone number ending in 6371.

23. Plaintiff Ehde registered her cell phone number on the DNC on June 20, 2023.

24. Plaintiff Ehde has owned her cell phone number for at least 7 years.

25. Plaintiff Ehde uses her cell phone number for personal and household use only as one would use a residential landline.

26. Plaintiff Ehde does not own a residential landline number.

27. Plaintiff Ehde's phone number is registered under her maiden name Dana Clugston.

28. Plaintiff Ehde does not and has never used her cell phone number for business purposes or employment.

29. It has never been held out by Plaintiff Ehde to the public or advertised for business purposes.

30. It has only ever been used as a personal use phone number.

8

31. Plaintiff Ehde uses her cell phone number to communicate with family and friends.

32. Plaintiff Ehde uses her cell phone to deal with household issues like scheduling services.

33. The calls that Plaintiff Ehde received from Brookestone Funding were received more than 31 days after the Plaintiff registered her cell phone number on the DNC.

34. On July 30, 2024 at 3:00 PM, Plaintiff Ehde received an unsolicited call to her cell phone from 215-515-1101.

35. When Plaintiff answered this call, an employee said that he was looking to speak to someone named Andy.

36. In response, Plaintiff Ehde hung up the phone, as she has received unsolicited calls for Andy in the past regarding business funding.

37. The caller ID displayed the name Brookestone:



38. On July 30, 2024 at 6:40 PM, Plaintiff Ehde received a 2nd unsolicited call to her cell phone from 215-515-1101.

39. This call was not answered.

40. As with the previous call, the caller ID states the name Brookestone:



41. On July 30, 2024 at 6:44 PM, Plaintiff Ehde received a 3rd unsolicited call to her cell phone from 215-515-1101.

10

42. When Plaintiff Ehde answered this call, an employee said that he was looking to speak to Andy about business funding.

43. Plaintiff Ehde told the employee that he was calling the wrong number and that her cell phone number is registered on the DNC.

44. The employee argued, persisting in speaking to Andy.

45. After arguing back and forth, Plaintiff Ehde told the employee that she was going to contact a lawyer.

46. In response, the employee insulted Plaintiff.

47. By the end of the call, Plaintiff was emotionally distraught and upset.

48. The caller ID states the name Brookestone:



49. On August 7, 2024 at 1:18 PM, Plaintiff Ehde received a 4th unsolicited call to her cell phone from 833-946-0230.

11

50. This call was not answered, but a pre-recorded voicemail was left stating:


[6]

51. Plaintiff Ehde believes this voicemail is pre-recorded because it begins with 4 seconds of dead silence, it's generic in nature, it's factually incorrect (she did not request funding) and because there is distortion toward the end of the voicemail but the message continues in full after the distortion.

52. Plaintiff Ehde has never done business with Brookestone Funding.

53. The unauthorized solicitation telephone calls that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Ehde in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone, in addition to the mental distress they caused.

54. Seeking redress for these injuries, Plaintiff Ehde, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

---

[6] https://www.dropbox.com/scl/fi/yguj3a8xih60gsh35duth/voicemail-12932792512.m4a?rlkey=1x5o82ny5pt85w4p53eywf7cj&dl=0

12

## CLASS ALLEGATIONS

55. Plaintiff Ehde brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Brookestone Funding called on their cellular telephone number (2) using an artificial or pre-recorded voice.
>
> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Brookestone Funding called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

56. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Ehde anticipates the need to amend the Class definition following appropriate discovery.

57. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

58. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant Brookestone Funding or its agents placed pre-recorded voice message calls to Plaintiff Ehde and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b) whether Defendant Brookestone Funding placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether the calls constitute a violation of the TCPA;

(d) whether Class members are entitled to an injunction against Defendant preventing it from making unsolicited prerecorded calls; and

14

(e) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

59. **Adequate Representation**: Plaintiff Ehde will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Ehde has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Ehde and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Ehde nor her counsel have any interest adverse to the Classes.

60. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Ehde. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the

members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Ehde and the Pre-recorded No Consent Class)

61. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

62. Defendant Brookestone Funding and/or its agents transmitted unwanted telephone calls to Plaintiff Ehde and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

63. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Ehde and the other members of the Pre-recorded No Consent Class.

64. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Ehde and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Ehde and the Do Not Call Registry Class)

65. Plaintiff repeats and realleges paragraphs 1-60 of this Complaint and incorporates them by reference herein.

66. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

67. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

68. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Ehde and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

69. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Ehde and

the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

70. As a result of Defendant's conduct as alleged herein, Plaintiff Ehde and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

71. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

   a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;
   b) An award of money damages and costs;
   c) An order declaring that Defendant's actions, as set out above, violate the TCPA;
   d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and
   e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Ehde requests a jury trial.

         **DANA EHDE**, individually and on behalf of all others similarly situated,

DATED this 23rd day of September, 2024.

         By: /s/ *Stefan Coleman*
         Stefan Coleman
         law@stefancoleman.com
         COLEMAN PLLC
         11 Broadway, Suite 615
         New York, NY 10001
         (877) 333-9427

         Avi R. Kaufman*
         kaufman@kaufmanpa.com
         KAUFMAN P.A.
         237 S Dixie Hwy, Floor 4
         Coral Gables, FL 33133
         Telephone: (305) 469-5881
         *Pro Hac Vice motion forthcoming*

         *Attorneys for Plaintiff and the putative Classes*